IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:17-cv-01744-RBJ

RUBEN ARAGON, *et al.*,

      Plaintiffs,

v.

RICK RAEMISCH, *et al.*,

      Defendants.

---

## PLAINTIFFS' RESPONSE TO MOTION TO DISMISS

---

      Plaintiffs, through undersigned counsel, hereby respond to Defendants' Motion to Dismiss, filed October 2, 2017 [ECF No. 38] as follows:

### <u>INTRODUCTION</u>

      In this case, Plaintiffs have alleged that Defendants violate Plaintiffs' Eighth Amendment rights by deliberate policies of failing to treat chronic infection by the Hepatitis C virus (HCV) harming Plaintiffs and thousands of other inmates in the Colorado Department of Corrections (CDOC). These policies, whereby CDOC treats only a small quota of inmates with curative medicine, are not based on any medical justification. To the contrary, as alleged in the Amended Complaint, Defendants are aware that inmates will continue to die from chronic HCV infection over the next decade and suffer HCV-related complications for another decade. Yet, relying on outdated caselaw, and in spite of very recent decisions finding that similar rationing policies violate the Eighth Amendment, Defendants would have the Court dismiss Plaintiffs' complaint at

this early stage.  As discussed below, because the Amended Complaint more than plausibly establishes Defendants' deliberate indifference to Plaintiffs' substantial risk of serious harm, Defendants' Motion should be denied.

## BACKGROUND

Plaintiffs bring this action on behalf of themselves and similarly situated individuals for CDOC's failure and refusal to treat their chronic infection with HCV, in violation of the Eighth Amendment.[1]  *See* Am. Compl. ¶¶ 7-14, 109-13 [ECF No. 25].  Chronic HCV is an inflammatory disease that, left untreated, causes inflammation of the liver, leading to diminished liver function, liver failure, and liver cancer, as well as increased risk of heart disease, diabetes, B cell lymphoma and other cancers, Parkinson's disease, and kidney disease.  *Id.* ¶¶ 20, 23.  The disease often causes chronic fatigue, severe depression, and arthritis.  *Id.* ¶ 23.

In 2013 and 2014, the Federal Drug Administration approved the use of Direct Acting Antiviral medications (DAAs), which have well over a 90% success rate in curing the disease.  *Id.* ¶¶ 26-27.  As alleged in the Amended Complaint, the professionally-accepted clinical standard of care for treatment of HCV is expressed in guidelines propounded by the American Association for the Study of Liver Diseases and the Infectious Diseases Society of America (Guidelines).  *Id.* ¶¶ 28, 30.  The Guidelines recommend DAAs "for *all* patients with chronic

---

[1] In Pennsylvania, Missouri, Tennessee, Massachusetts, Minnesota, and Florida, departments of corrections are facing lawsuits on behalf of HCV-infected prisoners seeking class-wide prospective relief from policies similar to the CDOC policy challenged here.  *See Chimenti v. Pa. Dep't of Corr.*, No. 15-3333, 2017 U.S. Dist. LEXIS 124892 (E.D. Pa. Aug. 7, 2017) (denying motion to dismiss); *Postawko v. Mo. Dep't of Corr.*, No. 2:16-cv-04219-NKL, 2017 U.S. Dist. LEXIS 71715 (W.D. Mo. May 11, 2017) (denying motion to dismiss); *Graham v. Parker*, No. 3-16-cv-01954, 2017 U.S. Dist. LEXIS 68625 (M.D. Tenn. May 4, 2017) (granting class certification); *Fowler v. Turco*, No. 1:15CV12298 [ECF No. 46] (D. Mass. July 22, 2016) (granting class certification); *Ligons v. Minn. Dep't of Corr.*, No. 15-CV-2210 (PJS/BRT) (D. Minn.) (class certification pending); *Hoffer v. Jones*, No. 4:17-cv-00214-MW-CAS (N.D. Fla.) (class certification pending).

HCV infection" except those with short life expectancies.  *Id.* ¶ 28.  The Guidelines specifically urge treatment with DAAs in the very early stages of the disease and explicitly repudiate the idea of only prescribing DAAs for patients with significant liver damage.  *Id.* ¶ 29.

In order to be eligible to be considered for treatment under CDOC's challenged policy, HCV-positive prisoners must clear the initial threshold of having an APRI score of at least 0.7, which roughly represents an intermediate stage of fibrosis but does not necessarily indicate an absence of significant fibrosis.  *Id.* ¶¶ 22, 36-37.  According to the latest numbers from CDOC, 2,280 prisoners have been diagnosed with HCV infection, and 735 are eligible to be considered for treatment under its criteria.  *Id.* ¶¶ 32, 48.  The Amended Complaint alleges that Defendants have made deliberate decisions to treat currently only 30 prisoners per year, which CDOC has indicated could increase to 70 in the 2017-18 fiscal year.  *Id.* ¶¶ 43, 49-50.  CDOC denies treatment to many prisoners who comply with every precondition under its policies, without medical justification.  *Id.* ¶ 42.

Dr. Susan Tiona, then CDOC's Chief Medical Officer, but now retired, stated in May 2016 that CDOC's plan to continue to identify and prioritize only the sickest individuals for treatment each quarter should eliminate deaths from HCV within the next decade and HCV-related complications by 2035.  *Id.* ¶ 46.  HCV was a contributing factor in 18 deaths in fiscal years 2013-16.  *Id.* ¶ 44.  In light of those facts, the Amended Complaint alleges that "CDOC deliberately and intentionally delays and denies treatment to the overwhelming majority of prisoners who are living with chronic HCV."  *Id.* ¶ 33.

## ARGUMENT

### A. Rule 12(b)(6) Standard

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept well-pled, non-conclusory allegations of a complaint as true and construe them in the light most favorable to the plaintiff. *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002); *see also Iqbal*, 556 U.S. at 681. Plaintiffs can meet the threshold pleading standard by offering sufficient factual allegations to raise the right to relief above a speculative level. *See, e.g., Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

### B. Defendants' Policies Violate Plaintiffs' Eighth Amendment Rights by Exhibiting Deliberate Indifference to Their Serious Medical Needs

"Prison officials violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act deliberately and indifferently to serious medical needs of prisoners in their custody." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976)). "The Eighth Amendment also protects against future harm to an inmate." *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). Accordingly, the Eighth Amendment is violated when "prison officials 'have, with deliberate indifference,' involuntarily exposed a prisoner to conditions 'that pose an unreasonable risk of serious damage to the inmate's future health.'" *Hutchinson v. Houle*, No. 11-cv-03108-WJM-MEH, 2012 U.S. Dist. LEXIS 156023, at *15-16 (D. Colo. Sep. 4, 2012) (quoting *Helling*, 509 U.S. at 35; *Estelle*, 429

U.S. at 105 (alteration omitted)).  The test for deliberate indifference has objective and subjective

components, both of which Defendants' conduct satisfies here.  *See Hunt*, 199 F.3d at 1224

(citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

In at least six recent cases, courts ruled that allegations regarding similar policies denying

DAA treatment to inmates with chronic HCV infection state valid Eighth Amendment claims.

These include two of the class actions noted above, *supra* n.1.  Three additional rulings are *Allah*

*v. Thomas*, 679 F. App'x 216 (3d Cir. 2017); *Cunningham v. Sessions*, No. 9:16-cv-1292-RMG,

2017 U.S. Dist. LEXIS 82910 (D.S.C. May 31, 2017); and *Henderson v. Tanner*, No. 15-0804-

SDD-EWD, 2017 U.S. Dist. LEXIS 37862 (M.D. La. Feb. 16, 2017).  In a sixth case, after a full

evidentiary hearing, a court criticized departmental protocol and granted a preliminary injunction

ordering DAA treatment for an inmate.  *Abu-Jamal v. Wetzel*, No. 3:15-CV-2000, 2017 U.S.

Dist. LEXIS 368 (M.D. Pa. Jan. 3, 2017).  As demonstrated below, unlike the cases cited by

Defendants, these decisions address very similar circumstances and reject arguments similar to

those made by Defendants.  For example, in the Pennsylvania class action, the court concluded:

> [T]he DOC Defendants developed a Hepatitis C Protocol that denies or delays
> treatment with DAADs to the vast majority of prisoners with Chronic Hepatitis C
> infections, even though treatment with DAADs is the current standard of care for
> individuals with Chronic Hepatitis C infections such as the Plaintiffs. . . .
> Plaintiffs have serious medical needs for treatment for their Chronic Hepatitis C
> and that the DOC Defendants intentionally denied and/or delayed Plaintiffs'
> access to any medical care for their serious medical needs . . . .

*Chimenti*, 2017 U.S. Dist. LEXIS 124892, at *30-32.  In reaching a similar conclusion, the court

in the Missouri class action found that a "'wait and see' policy of relying solely on APRI scores

and delaying DAA treatment until the disease has progressed to a far more serious level

contravenes the applicable medical standard of care without any medical justification."

*Postawko*, 2017 U.S. Dist. LEXIS 71715, at *20-22.  In contrast, Defendants cite to no cases

granting a motion dismiss where the complaint alleged that the applicable standard of care is to

provide DAAs to all inmates with chronic HCV infection.

### 1.  Defendants Have Violated the Objective Component by Exposing Plaintiffs to a Substantial Risk of Serious Harm

"To satisfy the objective component, the alleged deprivation must be 'sufficiently

serious'; that is, it must expose the inmate to a 'substantial risk of serious harm.'"  *Kellum v.*

*Mares*, 657 F. App'x 763, 767 (10th Cir. 2016) (quoting *Farmer*, 511 U.S. at 834).  A "medical

need is sufficiently serious if it is one that has been diagnosed by a physician as mandating

treatment or one that is so obvious that even a lay person would easily recognize the necessity

for a doctor's attention."  *Hunt*, 199 F.3d at 1224.  "A serious medical need also includes one

that requires preemptive care in order to protect an inmate against future risk."  *Ginest v. Bd. of*

*Cnty. Comm'rs*, 333 F. Supp. 2d 1190, 1197 (D. Wyo. 2004) (citing *Helling*, 509 U.S. at 32-33;

*Hunt*, 199 F.3d at 1224).

As another court recently emphasized in the Missouri class action, chronic HCV infection

is "unquestionably a serious medical problem."  *Postawko*, 2017 U.S. Dist. LEXIS 71715, at

*16-17 (citing *Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004)); *see also Wellman v.*

*Raemisch*, No. 13-cv-0952-REB-MJW, 2015 U.S. Dist. LEXIS 34221, at *7 (D. Colo. Mar. 19,

2015) ("Generally, an illness such as Hepatitis C presents a serious medical need."); *Gonzales v.*

*Corizon Health Care Providers*, No. CV 15-00890 WJ/GJF, 2017 U.S. Dist. LEXIS 8379, at *8

(D.N.M. Jan. 18, 2017) (finding that plaintiff "has a serious medical need" based on his chronic

HCV diagnosis).  In *Cunningham*, the court found the objective element satisfied where

"Plaintiff has alleged that without access to a cure, he will continue to suffer from chronic

Hepatitis C, which may lead to liver failure, liver cancer, and death." 2017 U.S. Dist. LEXIS 82910, at *11; *see also Postawko*, 2017 U.S. Dist. LEXIS 71715, at *17-18, 24 ("Plaintiffs' chronic HCV condition is a serious and harmful medical condition, which risks increasingly serious liver damage, among other bodily harms, to those who have it.").

Similarly, Plaintiffs' chronic HCV infection can cause inflammation of the liver, leading to diminished liver function, liver failure, and liver cancer, and increased risk of serious diseases including cancers. Am. Compl. ¶¶ 20, 23. Their medical condition thus presents the substantial risk of serious harm, including future harm, sufficient to satisfy the objective component of the Eighth Amendment analysis. *Cf., e.g., Helling*, 509 U.S. at 35 (holding that inmate alleged a valid Eighth Amendment claim where he was exposed to levels of second-hand smoke presenting risk of damage to future health); *McDonald v. Hardy*, 821 F.3d 882, 889 (7th Cir. 2016) (noting that high cholesterol "can progress over an extended period of time without apparent side effects before eventually reaching a crisis point" and holding that "[c]ustodians are not excused from ensuring adequate treatment for inmates with chronic or degenerative conditions simply because any resulting harms may remain latent or have not yet reached the point of causing acute or life-threatening injuries."). In addition, the standard of care requiring that nearly all patients with chronic HCV infection should be treated with DAAs demonstrates that Plaintiffs' condition is sufficiently serious as to mandate treatment or so obvious that laypeople would recognize the necessity for medical attention.

Nearly all of the decisions Defendants rely upon with respect to the objective element were issued prior to the current professionally-accepted standard of care that recommends DAA treatment for all individuals chronically infected with HCV. For example, Defendants cite one

decision for the proposition that "not *all* cases of Hepatitis C require drug treatment therapy." Mot. 7 (citing *Villarreal v. Holland*, No. 14-9-DLB, 2016 U.S. Dist. LEXIS 5112 (E.D. Ky. Jan. 15, 2016)).   However, the actual language from *Villareal* is that "not all cases of Hepatitis C require *interferon and ribavirin* drug therapy treatment."  2016 U.S. Dist. LEXIS 5112, at *23 (emphasis added); *see also id.* at *25-26, 30.  The medical community, and CDOC itself, has discarded this combination therapy.  *See* Am. Compl. ¶ 33.  In contrast to DAAs, which essentially cure chronic HCV, combination therapy with interferon and ribavirin caused serious side effects and had a low effectiveness rate.  Am. Compl. ¶ 24; *see also Postawko*, 2017 U.S. Dist. 71715, at *32-33 ("The cases cited by Defendants are distinguishable because at the time they were decided, there was no effective, safe treatment for HCV, and DAA drugs were not yet available. According to Plaintiffs' Complaint, until the recent advent and approval of DAA drugs, there was *no* effective and safe treatment for HCV.").  More recent decisions recognize this distinction in rejecting other defendants' similar reliance on decisions by "courts that had less information and that were applying a now out-of-date standard of care." *Abu-Jamal*, 2017 U.S. Dist. LEXIS 368, at *54; *see also Cunningham*, 2017 U.S. Dist. LEXIS 82910, at *11-12.

Also, contrary to Defendants' contentions, this case is not about delayed medical care, but rather the denial of medical care.  Due to the substantial risk of serious harm that Plaintiffs face by living with their chronic HCV infection, they all should be receiving curative treatment, which Defendants continue to deny them.  *See* Am. Compl. ¶¶ 52, 58, 70, 80, 88, 92, 95, 99.  In contrast, Defendants rely on cases in which the plaintiffs eventually received DAA treatment and sued to recover damages for the past delay in treatment.  *See Vasquez v. Davis*, 226 F. Supp. 3d 1189 (D. Colo. 2016); *Wright v. Hodge*, No. 12-cv-02214-CMA-MJW, 2014 U.S. Dist. LEXIS

78185, at *11-12 (D. Colo. May 16, 2014); *Insley v. Graham*, No. ELH-16-1220, 2016 U.S. Dist. LEXIS 169640, at *34-37 (D. Md. Dec. 8, 2016).  In *Vasquez*, the court rejected the plaintiff's claim for damages for past delay in treatment, but it maintained jurisdiction to ensure that the plaintiff would continue receiving effective DAA treatment.  *See* 226 F. Supp. 3d at 1211-20, 1224-25.  Here, Plaintiffs do not seek damages for delay in treatment; they seek prospective relief to prevent a known, substantial, and continuing risk of serious harm.

Furthermore, all of the cases Defendants cite for the proposition that HCV does not satisfy the substantial harm requirement were decided at the summary judgment stage, after the parties presented evidence on the past harm suffered by individual plaintiffs.  *See, e.g.*, *Vasquez*, 226 F. Supp. 3d at 1207.  In many of these cases, *pro se* plaintiffs failed to present evidence to rebut their adversaries' evidence.  *See Whitington v. Moschetti*, 423 F. App'x 767, 773 (10th Cir. 2011) (defendants presented uncontroverted evidence); *Johnson v. Dash*, No. 12-cv-02400-REB-KMT, 2015 U.S. Dist. LEXIS 122110, at *12-13 (D. Colo. Aug. 20, 2015) ("uncontroverted evidence"), *aff'd*, 656 F. App'x 431 (10th Cir. 2016); *Wright*, 2014 U.S. Dist. LEXIS 78185, at *12-13 ("Plaintiff offered no contrary evidence"); *Alley v. Dowis*, No. 09-cv-02713-WYD-BNB, 2011 U.S. Dist. LEXIS 93952, at *22-23 (D. Colo. May 2, 2011).  In contrast, Plaintiffs intend to introduce evidence supporting the standard of care and its application in their case.  Thus, the cases cited by Defendants do not support dismissal.  *See Allah*, 679 F. App'x at 220 n.2 (distinguishing cases used to support lower court's dismissal because they were "decided under the summary judgment rule"); *Henderson*, 2017 U.S. Dist. LEXIS 37862.[2]

---

[2] Defendants allude obliquely to a possible cost-based justification for denial of treatment, Mot. 5, 6, 8, 14, an argument not properly before the Court.  If Defendants intend to produce actual *evidence* of cost, along with legal argument that such evidence somehow justifies denying life-saving curative treatment, Plaintiffs will certainly be

Defendants attempt to convert their Motion to one for summary judgment through extensive reliance on statements expressed by Dr. Tiona in a letter referenced one time in Plaintiffs' Complaint. *See* Mot. 6-7. The Complaint's singular reference to the letter is to note Dr. Tiona's acknowledgment that waiting to treat the 735 prisoners with APRI scores above .7 who are eligible to be considered for treatment under CDOC's protocol risks "permanent damage to the liver which could result in life-long complications, even after cure." Am. Compl. ¶ 49; Mot. Ex. A-1 at 3. In combination with CDOC's plan to treat only a severely limited number of prisoners each year, this statement, made while Dr. Tiona was CDOC's Chief Medical Officer, evidences Defendants' conscious and deliberate disregard of a serious risk to Plaintiffs' health, as required for the subjective element and demonstrated further below. By referencing Dr. Tiona's letter, Plaintiffs did not assert or endorse as true any additional assertions Dr. Tiona made in her letter, such as the assertion (which Plaintiffs vigorously dispute) that most cases of chronic HCV infection do not require treatment. Nonetheless, Defendants present as truth Dr. Tiona's assertions regarding the progression of HCV, such that "[m]ost chronically infected persons will not have any long-term problems with the infection." Mot. 7. These assertions, drawn from outside the Complaint, contradict the allegations that Plaintiffs make in their Complaint. *See, e.g.*, Am. Compl. ¶ 23 ("Chronic HCV is an inflammatory disease in and of itself, regardless of the degree of liver scarring. At all stages of liver fibrosis, HCV is associated with adverse health effects."). Thus, these additional outside-the-Complaint statements of Dr. Tiona are not appropriate for the Court's consideration, because (1) Plaintiffs dispute their

---

prepared to meet and refute any such defense at trial. At this stage of the case, however, resolution of this Rule 12(b)(6) motion turns on the factual allegations in Plaintiffs' complaint.

accuracy, and (2) Plaintiffs' inclusion of one statement from Dr. Tiona's letter does not make the entire letter central to the Complaint. *See Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103-04 (10th Cir. 2017). In deciding this Motion to Dismiss, the Court must assume the truth of the allegations in the Complaint and draw all inferences in Plaintiffs' favor, and it should find that Plaintiffs have met the objective element of an Eighth Amendment claim.

### 2. Defendants Violated the Subjective Component by Failing to Address a Known, Substantial Risk of Harm

Under the subjective component of an Eighth Amendment analysis, Plaintiffs must show that Defendants knew the inmates here "faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it.'" *Hunt*, 199 F.3d at 1224 (quoting *Farmer*, 511 U.S. at 847). "Deliberate indifference is . . . evidenced when prison officials place inmates in a condition likely to cause a serious health problem in the future." *Ginest*, 333 F. Supp. 2d 1190 at 1197 (citing *Helling*, 509 U.S. at 32-33; *Hunt*, 199 F.3d at 1224).

The Amended Complaint alleges that Defendants know that all individuals with chronic HCV infection face a substantial risk of serious harm, as demonstrated above, and they are aware of treatment that will cure these patients. However, as set forth in the pleadings, Defendants are ignoring the standard of care and refuse to treat the vast majority of these individuals, without any medical justification. Defendants' decision to treat 30 prisoners per year currently and up to 70 prisoners in fiscal year 2017-18, out of 2,280 HCV-positive prisoners, 735 of whom are eligible for treatment even under Defendants' unreasonably restrictive protocol, is not based on any medical justification, but is rather a rationing quota.

Courts have recently found that similar policies, even where inmates denied treatment are actively monitored, demonstrate deliberate indifference. In *Postawko*, the court found: "Despite

an effective and near-certain cure in the form of DAA drugs, Defendants follow a prioritization

and monitoring policy, which prolongs the suffering of those diagnosed with chronic HCV and

allows the progression of the disease to accelerate." 2017 U.S. Dist. LEXIS 71715, at *30.

Plaintiffs' allegations "show that the Defendants were aware that their actions created the

substantial risk of serious harm, namely, that Plaintiff's chronic Hepatitis C infection could lead

to cirrhosis, liver failure, liver cancer, and death." *Cunningham*, 2017 U.S. Dist. LEXIS 82910,

at *11; *see also* Am. Compl. ¶¶ 20, 23.

The Tenth Circuit has similarly held that merely monitoring an inmate's HCV "[w]ithout

much more to indicate an appropriate and specific course of treatment for petitioner's Hepatitis

C" violates the Eighth Amendment. *Thomas v. Bruce*, 125 F. App'x 964, 968 (10th Cir. 2005)

("Beyond receiving blood tests confirming that he has Hepatitis C and suggesting abnormal

enzyme levels possibly indicative of liver disease, we can find no basis in the record to support

the district court's finding that Thomas 'is receiving ongoing care for his medical condition.'");

*see also Green v. Fed. Bureau of Prisons*, No. 07-cv-1011-DME-MEH, 2009 U.S. Dist. LEXIS

4209, at *13-14 (D. Colo. Jan. 21, 2009) (rejecting argument that "because Hepatitis-C is a

complex disease . . . the lengthy testing period was necessary to evaluate the proper course of

treatment"). Furthermore, Plaintiffs more directly establish Defendants' culpable state of mind

through the damning allegation that Defendants implemented their rationing policy knowing that

prisoners will continue to die from HCV over the next decade and suffer from HCV-related

complications until 2035. Am. Compl. ¶ 46. Thus, Defendants' conduct far exceeds negligence

and satisfies the "stringent standard of fault" required to satisfy the Eighth Amendment's

subjective test. *E.g.*, *Giron v. Corrs. Corp. of Am.*, 191 F.3d 1281, 1285-86 (10th Cir. 1999).

Contrary to Defendants' assertions, Plaintiffs are not expressing mere disagreement with the treatment they are receiving; rather, they are receiving no treatment whatsoever.  *See Birman v. Berkebile*, No. 14-cv-376-KLM, 2015 U.S. Dist. LEXIS 117712, at *21 (D. Colo. Sept. 3, 2015) ("To the extent that Defendants argue that an inmate's difference of opinion concerning his medical treatment does not generally support a claim for cruel and unusual punishment, the Court notes that there are no allegations that Plaintiff is receiving any treatment whatsoever for his [chronic HCV]." (citation omitted)); *Green v. Fed. Bureau of Prisons*, No. 07-cv-1011-DME-MEH, 2009 U.S. Dist. LEXIS 4209, at *13-14 (D. Colo. Jan. 21, 2009) ("Green does more that disagree with the prison's approach to his medical treatment.  Green alleges that, not only did the defendants fail to provide him with his desired treatment [for his chronic HCV], they completely failed to treat him for over a year.").  Courts have recently rejected arguments by defendants who deny DAAs to inmates chronically infected with HCV that those inmates are disagreeing with their course of treatment, even where those defendants actively monitor the inmates:

> This is not a mere disagreement with the course of care. . . . Plaintiff has shown that Defendants have deliberately denied providing treatment to inmates with a serious medical condition and chosen a course of monitoring instead.  They have done so with the knowledge that (1) the standard of care is to administer [DAA] medications regardless of the disease's stage, (2) inmates would likely suffer from hepatitis C complications and disease progress without treatment, and (3) the delay in receiving DAA medications reduces their efficacy.

*Abu-Jamal*, 2017 U.S. Dist. LEXIS 368, at *51; *see also Chimenti*, 2017 U.S. Dist. LEXIS 124982, at *23-33.  In the Missouri class action, the court rejected the same disagreement-with-treatment argument by noting, "Plaintiffs do not allege a mere dispute about which HCV medication they receive, but instead, they allege that they do not receive any HCV medication." *Postawko*, 2017 U.S. Dist. LEXIS 71715, at *31.  Thus, Defendants' insistence here that

Plaintiffs should "undergo the alternative monitoring set forth in the Hepatitis C Protocol," Mot. 15, is an insistence that Plaintiffs acquiesce in receiving no treatment at all. Defendants' position reflects deliberate indifference in violation of the Eighth Amendment.

The cases upon which Defendants rely in contending that Plaintiffs have failed to satisfy the subjective element are inapposite for similar reasons as those stated above with respect to the objective element. Again, in none of the cases did those individual *pro se* plaintiffs adequately allege that Defendants knew of the professionally-accepted standard of care and therefore were deliberately indifferent to the recommendation that all persons with chronic HCV receive DAAs. *See, e.g.*, *Gonzales*, 2017 U.S. Dist. LEXIS 8379, at *12 ("The questions of the medical standard of care and whether all inmates diagnosed with Hepatitis C should receive the new medications regardless of cost or individual circumstances are medical questions beyond the scope of the issues raised in this case."); *Johnson v. Frakes*, No. 8:16CV155, 2016 U.S. Dist. LEXIS 102495, at *1-2, 5-6 (D. Neb. Aug. 4, 2016) (no allegation of standard of care, but simply that plaintiff had become aware of Harvoni as a cure for his HCV and requested it). Two of the cases included in the quoted portion of *Gonzales* also are distinguishable in that the plaintiffs either received some treatment or a medically-based reason for the denial of DAAs. *See Harrell v. Cal. Forensic Med. Grp., Inc.*, No. 2:15-cv-0579 KJN P, 2015 U.S. Dist. LEXIS 149084, at *2-4 (E.D. Cal. Nov. 3, 2015) (dismissing case but granting leave to amend where denial of treatment was based in part on further discussion being needed as whether DAAs may have adverse effects with other medications); *Smith v. Corizon, Inc.*, No. JFM-15-743, 2015 U.S. Dist. LEXIS 169699, at *14-17 (D. Md. Dec, 17, 2015) (granting summary judgment where plaintiff had previously received treatment with Interferon and Ribavirin and cautioning that "the court in no

way implies that Smith is not entitled to future medical treatment for his condition"). Finally, in *Paulley v. Chandler*, the court had previously granted injunctive relief for the plaintiff to get drug therapy for his HCV, and the language quoted by Defendants was in relation to denial of class certification due to the breadth of the proposed class. *See* No. 3:99-CV-P549-H, 2000 U.S. Dist. LEXIS 21690, at *2 n.1, *11-13 (W.D. Ky. Apr. 18, 2000). Accordingly, these cases do not undermine the conclusion that the Amended Complaint plausibly alleges that Defendants are deliberately indifferent to Plaintiffs' substantial risk of serious harm.

## CONCLUSION

Plaintiffs' allegations in their Amended Complaint establish that Defendants are failing to treat their serious medical condition with a known cure. Defendants are aware that their conduct will continue to result in inmate deaths and complications from chronic HCV infection. Accordingly, the Amended Complaint more than adequately alleges a violation of the Eighth Amendment, and Plaintiffs respectfully request the Court deny Defendants' Motion to Dismiss.


Dated: October 26, 2017                          Respectfully submitted,


   */s/ Christopher P. Beall*                         */s/ Mark Silverstein*
Christopher P. Beall                              Mark Silverstein
Fox Rothschild LLP                               ACLU Foundation of Colorado
1225 Seventeenth Street, Suite 2200              303 E. Seventeenth Ave., Suite 350
Denver, Colorado 80202                           Denver, Colorado 80203
Phone: 303.292.1200                              Phone: 303.777.5482
Fax:    303.292.1300                             Fax:    303.777.1773
Email: cbeall@foxrothschild.com                  Email: msilverstein@aclu-co.org
     In cooperation with the
     ACLU Foundation of Colorado                 *Attorneys for Plaintiffs*

### CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2017, I electronically filed the foregoing **PLAINTIFF'S RESPONSE TO MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing via the ECF-CM system to all counsel of record.

*/s Christopher P. Beall*